UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ALBEMARLE CORPORATION**                         **CIVIL ACTION**

**VERSUS**                                         **NUMBER 02-505-A-M3**

**GREAT LAKES CHEMICAL CORPORATION**

CONSOLIDATED WITH

**ALBEMARLE CORPORATION**                         **CIVIL ACTION**

**VERSUS**                                         **NUMBER 02-506-A-M3**

**GREAT LAKES CHEMICAL CORPORATION**

## ORDER

Before the court is the parties Joint Submission on Disputed Privilege Claims (Filed Under Seal)(rec. doc. 334), which were submitted to the court for review and resolution.

### *Background*

The production of documents in this case has been fraught with disputes over the form of privilege logs to use, the inadvertent production of documents later withheld as privileged, and challenges to the designation and withholding of documents as privileged. After much wrangling and court involvement, the parties were ordered to reformulate and reconstruct their privilege logs, to review their disputes, to follow a procedure for resolving those, and ultimately, to submit to the court for decision, and *in camera* review, if necessary, those issues of privilege the parties were unable to resolve. To the court's dismay, the documents for which the parties were unable to resolve the privilege dispute number well over 1,500.

***Albemarle's Challenges to Great Lakes***

Albemarle argues that Great Lakes has improperly withheld documents created prior to 2002, when litigation was instituted, based on the work-product doctrine.  That is, Great Lakes has claimed work-product immunity on several documents that were generated prior to 2002.  Albemarle argues that the "sine qua non of a work product claim for a document is that it was prepared in anticipation of litigation," citing *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947),[1] and that Great Lakes previously represented to Albemarle and the court, when accused of wrongful document destruction, that it did not anticipate litigation until 2002.

Great Lakes responds that the standard for anticipation of litigation for purposes of the work-product doctrine is not the equivalent of the tolling of the obligation for document retention.  Therefore, Great Lakes submits, Albemarle's blanket challenge of Great Lake's withholding of pre-2002 created documents as work-product is untenable.  That is, Great Lakes may invoke work-product immunity for certain documents created prior to the invocation of its duty to retain documents.

Secondly, Albemarle challenges Great Lakes' withholding of documents corresponding to 17 specific entries on Great Lakes' privilege log.  Great Lakes has submitted these documents for in camera review.[2]  Albemarle challenges these entries, which have been withheld  either as attorney-client or as work-product privileged, arguing

---

[1]See *Joint Submission on Disputed Privilege Claims* (rec. doc. 334), pg. 22.

[2]Albemarle's challenge to Great Lakes' Privilege Log Entry #668 was withdrawn . See Exhibit 16 to the *Joint Submission on Disputed Privilege Claims* (rec. doc. 334). The privilege log entries being challenged are the "Kirkland and Ellis" documents, entry #141, 420, 431, 460, 461, 462, 474, 492, 520, 585, 630; the "McCann " documents, entry # 368, 391, 393, 409, and 410.

that Great Lakes' reliance on advice of counsel as one its defenses to Albemarle's claim of willful patent infringement operates as a waiver of privilege as to both the Kirkland and Ellis (former counsel for Great Lakes) and McCann (former in- house counsel for Great Lakes) documents.  In response, Great Lakes argues that Kirkland and Ellis were former litigation counsel, not opinion counsel for Great Lakes, and as such, there is an advice of counsel waiver only for documents containing "potential damaging information" or expressing "grave reservations respecting the opinion letter."[3] Great Lakes likewise argues that the McCann documents are not the opinions of McCann, but "relate to communications with, or work product prepared at the direction of Kirkland & Ellis, Great Lakes prior contemplated litigation counsel."[4]

***Discussion***

Albemarle's argument that Great Lakes has somehow compromised *any* assertion of work-product privilege to documents created prior to the institution of litigation by its representations to counsel and court is unavailing.  Great Lakes' prior statement that anticipated litigation was not the motivation for the destruction of  certain documents is not equivalent to Great Lake's admitting that it did not anticipate any litigation prior to 2002. Regardless of the parties' accusations flying back and forth, the court made no finding with regard to alleged spoliation or anticipation of litigation that would serve to penalize Great Lakes from making any claim of work-product privilege for documents created prior to filing suit. (See *Report and Recommendation* #469, *Ruling* #470, *Ruling* #487).  Therefore,

---

[3]*Joint Submission on Disputed Privilege Claims* (rec. doc. 334), p. 35, citing *Thermos Co. v. Starbucks Corp.,* 1992 WL 781120 at *4 (N.D. Ill.), citing *Micron Separations, Inc. v. Pall Corp.,* 159 F.R.D. 361, 365 (D.Mass. 1995); and *Clintec Nutrition Co. v. Baxa Corp.,* 1996 WL153881 at *1 (N.D.Ill.).

[4]*Ibid.*, p. 36.

Albemarle's blanket challenge, independent of any content, to those documents withheld as work-product prior to 2002 is denied, and Great Lakes shall not be required to produce those documents.

Secondly, the court has reviewed the documents submitted *in camera* by Great Lakes for review. The court has these documents, and rules as follows:

### The McCann documents

The attorney-client and work-product privileges applicable to all of the *McCann* documents have been waived by Great Lakes' by reliance on the advice of counsel as a defense to willful infringement, the parameters of which were discussed in detail in this court's prior Order (rec. doc. 387), and as defined in *In re Echostar Communications Corporation*, 448 F.3d 1294 (Fed. Cir. 2006) , and will not be repeated here. All of the documents contain information regarding the subject patents and were communicated to Great Lakes.[5]

### The Kirkland and Ellis documents

The attorney-client and work-product privileges applicable to the *Kirkland and Ellis* documents are waived as to some, and not as to others. The privilege has been waived as to documents covered by Great Lakes' First Supplemental Privilege Log Entry No. 141, bates numbers GT020783-GT020784, and Third Supplemental Privilege Log Entry No. 420, bates numbers GT020783 and GT020784, as they clearly reflect opinion and advice of counsel communicated to Great Lakes' decision makers regarding the patents at issue.

---

[5] Entry numbers 368, 391, 393, 409, 410.

The privilege has not been waived as privilege log entries 431, 460, 461, 462, and 520,[6] which are drafts of Great Lakes position papers regarding the validity of the patents at issue, as there is no evidence from the documents themselves that these drafts were ever communicated to Great Lakes' decision makers.  For the reasons previously expressed in this court's prior Order (rec. doc. 387), and the United States Court of Appeals for the Federal Circuit in *In re Echostar* (supra), these documents are work-product privileged, and not within the scope of the waiver.

While not entirely clear, it appears that the documents withheld under Great Lakes' Third Supplemental Privilege Log Entry No. 585, bearing Great Lakes' internal numbers GT067155-GT067204, are a power-point presentation by "amontero" and, as it is titled "Microsoft PowerPoint - GLCC-Tec," appears to have been communicated to Great Lakes. Great Lakes should determine whether or not this was communicated to Great Lakes, and if so, it must produce the documents to Albemarle, as the power point slide refer to opinion of counsel regarding the patents in suit.  Therefore, if communicated to Great Lakes, the privilege has been waived, and documents withheld under bates numbers GT067155 - GT067204 should be produced.

The documents withheld under Great Lakes' Third Supplemental Privilege Log Entry No. 492, bearing Great Lakes' internal numbers GT077077-GT077079, and Entry No. 474, bates number GT069454, are attorney work-product privileged, and also not within the scope of the waiver for the reasons expressed in the prior Order (rec. doc. 387), as these

---

[6]Great Lakes' Third Supplemental Privilege Log Entries No. 431, bearing Great Lakes' internal bates numbers GT074067-GT074082; 460, bates numbers GT074086-GT074103; No. 461, bates numbers GT074048-GT074066; 462, bates numbers GT074104-GT074121; 520, bates numbers GT072388-GT072407.

are communications between attorneys, not communicated to Great Lakes decision makers, nor do they discuss communications held between attorney and client.  See *In re Echostar Communications*, 448 F.3d.1294 (Fed. Cir. 2006).

The document withheld as Great Lakes' Third Supplemental Privilege Log Entry No. 630, bearing Great Lakes' internal number GT076837 is attorney-client privileged, but is within the scope of the waiver, as it is communication from Great Lakes' management to new counsel related to the opinion of counsel regarding the '477 patent.

### ***Great Lakes' Challenges to Albemarle***

Great Lakes challenges over 1,500 documents that Albemarle has designated as privileged.  These documents were not submitted for *in camera* review because of their number.  Instead, Great Lakes and Albemarle ask the court to "address, on a general category-by-category basis, the legal principles underlying Great Lakes' challenges, instead of the actual content of <u>all</u> of these challenged documents."[7]  In order to address these "legal principles," the parties request that the court use representative documents illustrating a particular legal theory.  The devil is always in the details, however.  Great Lakes wants to select certain documents as "representative" and have Albemarle submit those documents for in camera review.  Albemarle, on the other hand, wants the court to select the "representative" documents.

The categories of withheld documents challenged by Great Lakes are identified by "letter codes." The codes, and the corresponding Albemarle Privilege Log Entries selected

---

[7] *Joint Submission on Disputed Privilege Claims (Filed Under Seal)*(rec. doc. 334), p. 40.

by Great Lakes as the representative samples, are summarized by Great Lakes as follows:[1]

| Great Lakes Challenge Category | Albemarle Privilege Log Entry Nos. |
|---|---|
| "T" (Attorney tangentially involved in communication, if at all) | 2118, 1503, 270, 314 and 1372 |
| "C" (Communicated to Third Parties) | 1013, 1033, 1034 |
| "A", "W" (Experiments and Tests) | 2246, 2247, 2248 and 2249 |
| "A" (Prior art, searches) | 65, 910, 976, 286, 1369 |
| "L", "M" (Translations) | 903, 1081, 1449, 2450 and 2577 |
| "F" (Foreign representatives" | 828, 2568, 2603, 2606, and 2714 |
| "N" (Not communicated to another person) | 343, 351, 1486, 2134, 2258 |
| "D" (Description inadequate to assess privilege claim) | 2414, 2516, 2517, 2518, 1179, 1181 |
|  |  |

Great Lakes additionally challenged multiple withheld documents under the crime-fraud exception. In association with these challenges, Great Lakes requested a "full, separate briefing schedule, due to the large number of patents involved, and the correspondingly large factual inquiry that is necessitated towards Albemarle's disclosure of these challenged log entries."[2]

Albemarle also asks Great Lakes for the return of several documents that it states were inadvertently produced to Great Lakes, but are privileged. Great Lakes has refused to return the documents.

---

[1] See *Joint Submission on Disputed Privilege Claims* (rec. doc. 334), p. 68.

[2] See *Joint Submission on Disputed Privilege Claims* (rec. doc. 334), p. 68.

*Discussion*

First, the court will not rule on representative samples. Obviously, the choice of the representative samples is open to debate, and it is difficult to see how the court could choose proper representatives without being familiar with the underlying documents the samples are supposed to represent. The court is both unwilling and unable to review upwards to 1500 documents and choose representative samples. Perhaps had the parties stipulated to the representatives and further stipulated, for example, that documents numbered 5 through 500 would be governed by the decision on certain representative documents, then the court would have more faith in the outcome. It is not difficult to imagine, however, a never-ending dispute over the application of the sample ruling to specific documents. Both parties have demonstrated an admirable ability to distinguish both the facts and the law in their respective favors, and the court has no doubt that their persuasive powers would flourish under such a theoretical ruling with so few ironclad parameters.

Second, from a judicial standpoint, a representative ruling is perilously close to an advisory ruling. That is, in a privilege dispute such as this, it is virtually impossible to make a blanket legal ruling in the abstract, and have it fairly applied to multiple documents with different factual components. The parties are not presenting particularly novel issues of law that must be determined. Their dispute seems centered more on the application of facts to the law, which means that any "representative" documents would need to be agreed in advance along with the specific documents being "represented' in order to avoid a useless and inappropriate advisory ruling.

For the above reasons, the court is not willing to issue opinions on the applicability

of a privilege in the abstract, without the actual document to which it is asserted the privilege attaches, or to rule on entire categories of withheld documents by representation, absent specific and stipulated agreements in advance with regard to the representative samples and the specific documents to which the representative documents attach. Absent a manageable quantity of documents or an enforceable stipulation governing a large number of documents, the Special Master procedure outlined below shall be utilized.

Great Lakes also asks the court to rule on whether 9 documents that were inadvertently produced to Great Lakes, and on which Albemarle timely claimed a privilege, are subject to production. However, Albemarle contends there are 27 documents that were inadvertently produced. If the content of these documents is included in the material to the court, whatever their number, the court cannot understand where they are, or what privilege log entries correspond to the documents. It is simply too unwieldy as presented, and the court is not willing to shuffle through this submission searching through inadvertently produced documents, about which the parties cannot agree on their number, trying to understand the privilege asserted on those particular documents and the basis of challenge.

Great Lakes also asks the court for an entirely separate briefing and hearing on whether Albemarle committed crime and fraud on the U.S. Patent and Trademark Office in the prosecutions of their patents on two of the bromine and three of the flame retardant patents, so that the crime-fraud exception to privilege applies.[3] The court is not willing to have an entire hearing at this time on whether Albemarle committed fraud on the U.S.

---

[3] The crime-fraud exception is asserted as to bromine patents '518 and '425, and to flame retardant patents 5,008,477; 5,077,334; and 5,302,768.

Patent and Trademark Office, when other means of resolving these privilege disputes have not been adequately utilized.

***Special Master Procedure***

As stated above, Great Lakes has challenged approximately 1,500 assertions of privilege, and some unclear number of inadvertently produced documents that Albemarle claims are privileged.  The court cannot make a determination of privilege without the documents, and even if it had the documents, does not have the resources to do this extensive an *in camera* review for these litigants and effectively manage the rest of its docket.  Therefore, after giving Great Lakes an opportunity to review its challenges, and Albemarle an opportunity to review  with an critical eye[4]  its designations of remaining challenged documents as privileged, the parties may resubmit the privilege dispute with appropriate stipulations, as outlined above, or select a Special Master for a more extensive review.  Albemarle likewise may request that the  inadvertently produced documents be returned, but the parties should identify the documents and provide supporting memoranda more clearly.  Any or all of the remaining disputes in this submission may be submitted to a Special Master.

The payment of the Special Master fees and costs shall reflect the degree of success enjoyed by each party.  That is, the division of the payment as between the parties shall reflect the percentage of claims upheld or denied.  Each party shall pay  the Special Master only for that percentage of privilege claims denied to that party.    If the parties cannot agree on a Special Master, they will each be ordered to submit a name to the court,

---

[4]The court cautions Albemarle not to confuse documents concerning business strategy and technical information with documents containing attorney-client privileged communications and attorney work-product.

and the court will randomly select from those two names. The Special Master will also resolve the issue of privilege over the inadvertently produced documents, and Great Lakes may raise the issue of crime-fraud on the U.S. Patent and Trademark Office, if it still feels compelled to do so, after ruling by the either the Court or the Special Master on these privilege challenges.

Therefore, for the reasons stated above,

**IT IS ORDERED** that the following documents be produced by Great Lakes to Albemarle within 15 days of the date of this Order:

1. Great Lakes' Third Supplemental Privilege Log Entries and Bates numbers as follows:

   | Entry | Bates Numbers |
   | --- | --- |
   | 368 | GLC133714 - GLC133715 |
   | 391 | GT060270 - GT060292 |
   | 393 | GT072183 - GT072185 |
   | 409 | GT058842 |
   | 410 | GT058843 |
   | 420 | GT020783 - GT020784 |
   | 630 | GT076837 |

2. Great Lakes' First Supplemental Privilege Log Entry No. 141, Bates Numbers GT020783 - GT020784.

3. If communicated to Great Lakes', Great Lakes' Third Supplemental Privilege Log Entry No. 585, Bates Numbers: GT067155 - GT067204.

**IT IS FURTHER ORDERED** that the following documents are either attorney-client or work-product privileged, and not within the scope of the waiver, and may be withheld, as follows:

4. Great Lakes' Third Supplemental Privilege Log Entries and Bates numbers as follows:

   | Entry | Bates Numbers |
   | --- | --- |
   | 431 | GT074067 - GT074082 |

```
460            GT074086 - GT074103
461            GT074048 - GT074066
462            GT074104 - GT074121
520            GT072388 - GT072407
492            GT077077 - GT077079
474            GT069454
```

**IT IS ORDERED** that within 15 days of the date of this Order, Great Lakes shall submit to Albemarle any withdrawals of challenges made to Albemarle's assertions of privilege;

**IT IS ORDERED** that within 30 days of the date of this Order, Albemarle shall submit to Great Lakes any withdrawals of assertions of privilege as to the remaining challenges made by Great Lakes.

**IT IS FURTHER ORDERED** that within 45 days of the date of this Order, the parties shall either:

1) submit for *in camera* review a joint stipulation setting forth specific representative documents and the bates numbers of all documents governed by the decision on the representative documents, along with supporting and opposing argument ; **and**

2) submit in a readily accessible manner the documents inadvertently produced that Albemarle now wants returned, the privilege claimed by Albemarle as to each document, and the challenge made by Great Lakes as to each document; **or**

3) the parties shall select a Special Master. If the parties cannot agree on the selection of a Special Master, then the parties shall submit, on the 45th day, each of their designations to the court for a random selection by the Court. The matter shall be immediately submitted thereafter to the Special Master for decision.

**IT IS FURTHER ORDERED** that the parties shall share the Special Master's fees and expenses according to their respective successes, as follows:

1) Albemarle shall pay the Special Master's fee in the percentage of its

       documents submitted to the Special Master that the master determines were improperly withheld as privileged or inadequately described as required by Fed. R. Civ. P. 26(b)(5);

2)     Great Lakes shall pay the Special Master's fee in the percentage of the documents submitted to the Special Master that the master determines were properly withheld as privileged or adequately described as required by Fed. R. Civ. P. 26(b)(5).

**IT IS FURTHER ORDERED** that Great Lakes' request for a hearing on the "crime-fraud" exception is **DENIED** without prejudice pending ruling by the Special Master or decision by the court on the resubmitted documents.

Signed in Baton Rouge, Louisiana, on January 22, 2008.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**